UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WELLS FARGO BANK N.A., AS TRUSTEE FOR OPTION ONE MORTGAGE LOAN TRUST 2006-2 ASSET-BACKED CERTIFICATES, SERIES 2006-2,<br><br>　　　Plaintiff,<br>v.<br><br>COMMONWEALTH LAND TITLE INSURANCE COMPANY,<br><br>　　　Defendant. | *　CIVIL ACTION NO.<br>*<br>*　**JURY TRIAL DEMANDED**<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

## COMPLAINT

**COMES NOW** Wells Fargo Bank N.A., as Trustee for Option One Mortgage Loan Trust 2006-2 Asset-Backed Certificates, Series 2006-2 ("Plaintiff"), by and through its undersigned counsel, and files this Complaint against Commonwealth Land Title Insurance Company ("Commonwealth" or "Defendant"), and states as follows:

## JURISDICTION

1. This Court has jurisdiction over these claims because they arise between citizens of different states and concern a controversy over an amount in excess of $75,000, such that diversity of citizenship jurisdiction exists pursuant to 28 U.S.C. § 1332.

## PARTIES

2. Wells Fargo Bank, N.A., as trustee, is a national bank with its main office, as set forth in its articles of association, located in Sioux Falls, South Dakota, and is therefore a citizen of South Dakota.

3. Commonwealth Land Title Insurance Company is a Florida corporation with its principal place of business in Jacksonville, Florida.

1

**FACTUAL ALLEGATIONS**

4. Prior to April 28, 2006, Chad Ham ("Ham") applied for a loan from Option One Mortgage Corporation ("Option One") in the amount of $546,125.00 (the "Loan") to refinance existing mortgage liens encumbering 4424 Constance Street, New Orleans, LA 70115 (the "Property").

5. As part of the closing process, Option One required title insurance and Commonwealth agreed to serve as the title insurance underwriter.

6. Audubon Title Company ("Audubon Title") served as the approved and insured agent for the title insurance underwriter, Commonwealth, in relation to pre-closing and closing activities related to the Loan. In that capacity, Audubon Title provided closing, escrow and title services for the Loan.

7. In reliance on the information provided by Audubon Title, as Commonwealth's agent, Option One required loan funds in the amount of $420,185.63 to be used to satisfy and pay off a prior lien in favor of "Chase" (Loan No. ending in 0406) and $74,356.25 to be used to satisfy and pay off a prior lien in favor of Iberia Bank. A true and correct copy of the HUD-1 Settlement Statement is attached hereto as **Exhibit A**.

8. On or about April 28, 2006, and based in part on the information provided in the pre-closing title work done by Audubon Title, Option One provided Audubon Title with Closing Instructions requiring Audubon Title to take certain actions as part of the closing to ensure, among other things, that its mortgage lien would be enforceable and in first priority position. A true and correct copy of the Closing Instructions is attached as **Exhibit B**.

9. The Closing Instructions specifically required Audubon Title to payoff and satisfy the prior liens in favor of Chase and Iberia Bank and required that Option One's mortgage be recorded in first lien position. *See* **Exhibit B**.

10. Option One entrusted Audubon Title to close the Loan and Audubon Title agreed to comply with the Closing Instructions.

11. Upon information and belief, prior to the Closing on April 24, 2006, Commonwealth issued a Closing Protection Letter ("CPL") to Option One agreeing to indemnify Option One or its successors and assigns for any actual loss sustained by Option One for failures by Commonwealth's approved agent, Audubon Title Company, to comply with the terms of the Closing Instructions, failures of the agent to follow reasonable industry standards when closing the Loan, and fraudulent or dishonest conduct. A true and correct copy of the CPL is attached hereto as **Exhibit C**.

12. In the event that Audubon Title failed to comply with the Closing Instructions or otherwise engaged in fraudulent or dishonest acts, Option One and its successors and assigns relied on the indemnity provided by Commonwealth in the CPL to reimburse them for any actual loss caused by Audubon Title's noncompliance with the Closing Instructions or fraudulent and dishonest acts.

13. On April 28, 2006, Ham executed an adjustable rate note in favor of Option One with an original principal balance of $546,125.00 (the "Note"). A true and correct copy of the Note is attached hereto as **Exhibit D**.

14. Contemporaneously with the execution of the Note, on April 28, 2006, Ham also executed a mortgage in favor of Option One, in the amount of $546,125.00, to secure the Property as collateral for the repayment of the Note (the "Mortgage"). The Mortgage was recorded in the

Orleans Parish public records on May 16, 2006. A true and correct copy of the Mortgage is attached hereto as **Exhibit E**.

15. On or about May 3, 2006, Option One delivered the loan funds in the amount of $546,125.00 to Audubon Title with the expectation that the disbursements would be made in accordance with the HUD-1 Settlement Statement.

16. Audubon Title did not pay off the prior liens in favor of Chase or Iberia Bank and did not record the Mortgage in first lien position, as required.

17. On May 16, 2006, Commonwealth issued a Title Insurance Policy No. J83-0115464 to Option One and its successors and/or assigns as their interests may appear, insuring the Mortgage to be a valid and enforceable first priority lien on the Property, among other things (the "Title Policy"). A true and correct copy of the Title Policy is attached hereto as **Exhibit F**.

18. On or about November 19, 2008, Commonwealth commenced litigation against Ham, Bell Title Corporation, which is also known as Audubon Title Company, and others in the Civil District Court of Orleans Parish as Civil Docket No. 2008-12027. As demonstrated by Commonwealth's action against Ham and Audubon Title, they were already on notice of the mortgage fraud scheme perpetrated by Ham and others.

19. On March 24, 2009, a prior holder of the Loan tendered a notice of claim to Commonwealth placing Commonwealth on notice of outstanding encumbrances with priority over the insured Mortgage (the "Initial Claim").

20. Upon information and belief, Commonwealth was aware that one of those prior encumbrances was proceeding with a foreclosure and did not intervene to stop the senior lien foreclosure or otherwise cure the title defect arising from the prior lien.

21. On August 13, 2009, Chase Home Finance, LLC conducted a foreclosure sale of a prior mortgage and it purchased the Property at the foreclosure sale. The Sheriff's Deed was recorded on October 1, 2009, in the Orleans Parish public records.

22. On or about May 23, 2011, Commonwealth agreed that coverage was due and advised that it would "work to resolve the matter under the Terms and Conditions of the Policy."

23. Upon information and belief, around the same time, Commonwealth commissioned an appraisal on the Property to determine its value as of April 7, 2011, a date wholly untethered from a loss calculation under the Policy (the "April 2011 Appraisal"). Upon information and belief, the April 2011 Appraisal valued the Property at $255,000 as of April 11, 2011.

24. On June 15, 2011, Commonwealth made an offer to settle the claim for $205,000. The June 15, 2011 offer, however, was inconsistent even with the valuation of the Property as of April 11, 2011, which again was not correlated to an event relevant to the title insurance policy.

25. Commonwealth's offer was not accepted by the insured claimant and additional negotiations regarding a loss payment followed.

26. By an assignment executed on December 27, 2012, the Note and Mortgage were assigned to Plaintiff by Option One. A true and correct copy of the Assignment is attached hereto as **Exhibit G**.

27. By a letter dated December 4, 2015, Commonwealth tendered a loss payment in the amount of $230,000 to the insured claimant (the "Partial Loss Payment"). In connection with providing that loss payment, Commonwealth acknowledged that it the claimant "may claim additional loss amounts based on a different valuation of the property" and invited further efforts to resolve the disputed amount of the loss payable noting that it would "review and evaluate any such additional claim if and when received."

28. Of note, the Partial Loss Payment was not even consistent with the property valuation that Commonwealth had obtained.

29. Commonwealth did not close the pending claim upon tendering the Partial Loss Payment and remained open to further discussions to fully resolve the insured's indemnity claim.

30. The insured claimant, through counsel, took Commonwealth up on its invitation to submit additional information regarding the additional loss payment due from Commonwealth on May 31, 2016 ("May 2016 Demand Letter").  A true and correct copy of the May 2016 Demand Letter is attached hereto as **Exhibit H**.

31. The May 2016 Demand Letter outlined the inadequacy of Commonwealth's Partial Loss Payment and the bases for full indemnity owed under the Title Policy and CPL.

32. Commonwealth has refused or constructively refused the demand for indemnity set forth in the May 2016 Demand Letter.

33. Commonwealth, however, refused to reevaluate its prior erroneous position regarding the amount of insured losses due and owing.

34. Upon information and belief, a retroactive appraisal of the appraisal has determined that the value of the Property as of September 8, 2009, was $500,000.

35. Commonwealth is aware of and in possession of that retroactive appraisal, but Commonwealth has failed to reconsider or reevaluate its erroneous calculation of the insured losses despite the invitation to the insured claimant in its December 4, 2015, letter and commitment to the insured claimant that it would "review and evaluate" such additional information.

36. Instead, it appears that Commonwealth is relying on a retrospective appraisal (as of April 2009) reflecting a $182,000 property valuation (the "Commonwealth Retrospective Appraisal").

37. In reaching a wildly divergent opinion regarding the value of the Property as of April 2009, Commonwealth's appraiser based his assessment on completely different and unsubstantiated hypotheses as to the condition of the Property and the square footage.

38. The Commonwealth Retrospective Appraisal is fatally flawed because it assumes the house located on the Property was much smaller in square footage, had only four rooms and assumed the house was in poor condition when all objective facts establish that the house was much larger, had more rooms and in much better condition.

39. The insured claimant, through the May 2016 Demand Letter, informed Commonwealth of the fatal defects in the Commonwealth Retrospective Appraisal in great detail.

40. Despite efforts by Plaintiff and its predecessors in interest, Commonwealth has continued to withhold payment of the insured's full and payable losses.

41. Plaintiff has complied with all of its obligations pursuant to the Title Policy.

## CLAIMS FOR RELIEF
### COUNT ONE — BREACH OF CONTRACT

42. Plaintiff incorporates by reference each and every factual allegation contained in the preceding paragraphs and further alleges that:

43. Commonwealth issued the Title Policy to Option One, its successors and assigns, including Plaintiff, for losses resulting from "any defect in or lien or encumbrance on the title" and "the priority of any lien or encumbrance over the lien of the insured mortgage," among other things.

44. Due to the failures of Audubon Title, Commonwealth's approved agent, to payoff prior liens as required and otherwise fraudulent actions, the Mortgage was not a first priority lien on the Property.

45. Upon Ham's default on the Loan, the prior holder of the Loan learned that the Mortgage was not in first lien position, as insured.

46. On March 24, 2009, the prior holder of the Loan submitted a timely notice of the title defects caused by the existence of the prior liens on the Property.

47. Commonwealth was aware of the pendency of foreclosure actions taken by the prior lien holders.

48. Despite Commonwealth's knowledge of multiple title insurance claims regarding the Property and the validity of the prior Argent Mortgage (foreclosed by Chase Home Finance, LLC), Commonwealth did not acknowledge the existence of coverage under the Title Policy until May 23, 2011.

49. On June 15, 2011, Commonwealth made an offer to settle the claim for $205,000, which was less than the loss payment required by the Title Policy.

50. By a letter dated December 4, 2015, Commonwealth tendered the Partial Loss Payment and acknowledged that the claimant "may claim additional loss amounts based on a different valuation of the property." To that end, Commonwealth invited additional discussions and promised to "review and evaluate" additional loss submissions.

51. In addition to the terms of the Title Policy, Commonwealth owes its insured, Plaintiff, a duty to comply with the contract in good faith.

52. To date, despite its suggestion that it would "review and evaluate" the additional loss owed to the insured, Commonwealth has not made any additional loss payment nor revisited its December 4, 2015 Partial Payment.

53. Commonwealth's actions and failures constitute breaches of its obligations under the Title Policy.

54. Commonwealth's actions and failures also constitute a breach of its obligation of good faith and fair dealing

55. Plaintiff, as a result of Commonwealth's failure to comply with the terms of the Title Policy, has suffered actual and compensatory damages.

WHEREFORE, Plaintiff demands judgment in its favor and against Commonwealth in the amount of all compensatory damages, including consequential damages for interest, fees, penalties, costs, attorneys' fees, and all such further damages as the Court deems reasonable and just.

## COUNT TWO — BAD FAITH
## LA REV. STAT. ANN. § 22:1892 AND § 22:1973

56. Plaintiff incorporates by reference each and every factual allegation contained in the preceding paragraphs and further alleges that:

57. On or about November 19, 2008, Commonwealth commenced litigation against Ham, Bell Title (also known as Audubon Title) and others in the Civil District Court of Orleans Parish as Civil Docket No. 2008-12027. As demonstrated by Commonwealth's action against Ham and Bell Title, they were already on notice of the mortgage fraud scheme perpetrated by Ham and others.

58. On March 24, 2009, a prior holder of the Loan tendered the Initial Claim to Commonwealth, but it was already of aware of the title issues giving rise to the claim under the Title Policy.

59. Moreover, Commonwealth was aware that one of those prior encumbrances was proceeding with a foreclosure and did not intervene to stop the senior lien foreclosure or otherwise cure the title defect arising from the prior lien.

60. On August 13, 2009, Chase Home Finance, LLC conducted a foreclosure sale of the prior mortgage and it purchased the Property at the foreclosure sale. The Sheriff's Deed was recorded on October 1, 2009, in the Orleans Parish public records.

61. On or about May 23, 2011, Commonwealth agreed that coverage was due and advised that it would "work to resolve the matter under the Terms and Conditions of the Policy."

62. Upon information and belief, around the same time, Commonwealth commissioned an appraisal on the Property to determine its value as of April 7, 2011, a date wholly untethered from a loss calculation under the Policy (the "April 2011 Appraisal"). The April 2011 Appraisal valued the Property at $255,000 as of April 11, 2011.

63. On June 15, 2011, Commonwealth made an offer to settle the claim for $205,000. The June 15, 2011 offer, however, was inconsistent even with the valuation of the Property as of April 11, 2011, which again was not correlated to an event relevant to the title insurance policy.

64. Commonwealth's offer was not accepted by the insured claimant and additional negotiations regarding a loss payment followed.

65. By a letter dated December 4, 2015, Commonwealth, in furtherance of the ongoing negotiations to resolve the Claim, tendered a loss payment in the amount of $230,000 to the insured claimant (the "Partial Loss Payment"). In connection with providing that loss payment, Commonwealth acknowledged that the claimant "may claim additional loss amounts based on a different valuation of the property" and invited further efforts to resolve the disputed amount of the loss payable. Commonwealth specifically noted that it would "review and evaluate any such additional claim if and when received."

66. The Partial Loss Payment was inconsistent with the valuation of the Property as of April 11, 2011, which again was not a date from which the insured losses should be measured, and was not consistent with the terms and conditions of the Title Policy.

67. Commonwealth's failure to make a full payment of insured losses on December 4, 2015, use of a property valuation devoid of any tie to the date of loss and inexplicable departure from its own, albeit erroneous appraisal, was arbitrary, capricious and unreasonable.

68. On May 31, 2016, the insured claimant demanded payment of $883,130.56 based on Commonwealth's clear and continuing breach of the terms and conditions of the Title Policy and Commonwealth's continuing duty of good faith and fair dealing.

69. Commonwealth, however, has refused to reevaluate its prior settlement offer.

70. Upon information and belief, Commonwealth is also in possession of a retrospective appraisal of the Property that valued the Property at $500,000 (as of September 8, 2009).

71. Commonwealth has refused to reevaluate its Partial Loss Payment based on the valid and credible retrospective valuation of the Property.

72. Instead, Commonwealth has doubled down on a flawed retrospective appraisal of the Property speculating that the value of the Property in April, 2009, again not the date of loss, was $182,000.

73. In reaching a wildly divergent opinion regarding the value of the Property as of April 2009, Commonwealth's appraiser bases his assessment on completely different and material hypotheses as to the condition of the Property and the square footage.

74. The retrospective appraisal relied upon by Commonwealth is fatally flawed because it assumes the house located on the Property was much smaller in square footage, had only four

rooms and assumed the house was in poor condition when all objective facts establish that the house was much larger, had more rooms and in much better condition.

75. In its May 2016 Demand, the insured claimant, through its counsel, informed Commonwealth of the fatal defects in the retrospective appraisal relied upon by Commonwealth in grave detail.

76. Despite recent efforts by Plaintiff and efforts by its predecessors in interest, Commonwealth has continued to withhold payment of the full amount owed under the Title Policy, which is a breach of its duty of good faith and fair dealing.

77. The insured has supplied a satisfactory written proof of loss through its May 2016 Demand Letter.

78. Pursuant to Louisiana law, Commonwealth is required to "pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss." LA. R.S. § 22:1892.

79. Pursuant to Louisiana law, an insurer "owes to his insured a duty of good faith and fair dealing" and has "an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant." LA. R.S. § 22:1973(A).

80. An insurer breaches its statutorily mandated duty by "[f]ailing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause." LA. R.S. § 22:1973(B)(5).

81. Commonwealth's failure to make a reasonable offer or to pay the insured's full losses on December 4, 2015 violated Commonwealth's duty of good faith and fair dealing and its affirmative duty to adjust claims fairly and promptly.

82. Commonwealth's actions and failures in handling this Claim are also arbitrary, capricious, and without probable cause because those failures were not and are not based on a good-faith defense.

83. Based on Commonwealth's clear bad faith conduct, Plaintiff is entitled to recover two times the damages sustained. LA. R.S. § 22:1973(C).

WHEREFORE, Plaintiff demands judgment in its favor and against Commonwealth in the amount of all statutory damages available under LA. R.S. § 22:1892 and § 22:1973, including but not limited to attorney's fees and costs, and all such further damages as the Court deems reasonable and just.

## COUNT THREE — DECLARATORY RELIEF

84. Plaintiff incorporates by reference each and every factual allegation contained in the preceding paragraphs and further alleges that:

85. Option One obtained a CPL from Commonwealth related to the closing of the Loan for the benefit of Option One and its successors and assigns, including Plaintiff.

86. By issuing the CPL, Commonwealth agreed to indemnify Plaintiff, as the duly authorized servicing agent for the indemnitee, for actual losses stemming from Audubon Title's failure to obtain a valid, first position lien against the Property.

87. Audubon Title did not pay off the prior liens in favor of "Chase" or Iberia Bank and did not record the Mortgage in first lien position, as required.

88. Audubon Title's actions at the Closing were fraudulent or dishonest and have deprived Plaintiff of the right to enforce the Mortgage as a first priority lien on the Property among other benefits of the original mortgage loan transaction.

89. Commonwealth's failure to honor the terms of the CPL by refusing to pay Plaintiff its actual losses under the CPL has introduced doubt as to its willingness to provide the requisite indemnity due under the CPL.

90. Commonwealth has also questioned the validity or applicability of the CPL to the transaction at issue.

91. Plaintiff is entitled to have any doubt regarding the indemnity due under the CPL, including its validity for this transaction, removed in its favor.

WHEREFORE, Plaintiff requests the Court to declare that Plaintiff is entitled to indemnity pursuant to the CPL in the amount of Plaintiff's actual losses and all such further relief as the Court deems reasonable and just.

DATED this 2nd day of December, 2025.

**BRADLEY ARANT BOULT CUMMINGS LLP**

By: */s/ Joshua A. Lesser*
Joshua A. Lesser
Louisiana Bar Roll No. 37205
600 Travis Street, Suite 5600
Houston, Texas 77002
Telephone: (713) 576-0300
Facsimile: (713) 576-0301
Email: jlesser@bradley.com

*Attorney for Plaintiff*

FOR SERVICE

Commonwealth Land Title Insurance Company
c/o Louisiana Secretary of State
P.O. Box 94125
Baton Rouge, LA 70804-9125